**WALKER–NEER MACHINE COMPANY,**
Appellant,

v.

**ACMELINE MANUFACTURING COMPANY,** Appellee.

No. 15614.

Court of Civil Appeals of Texas.

Fort Worth.

April 29, 1955.

Rehearing Denied May 27, 1955.

Jack Connell, Wichita Falls, for appellant.

J. R. Ogle, Smoot & Smoot, and Geo. A. Smoot, Wichita Falls, for appellee.

BOYD, Justice.

Emergency Steel Import Corporation and appellee Acmeline Manufacturing Company filed this suit against appellant Walker-Neer Machine Company for $2,337.14 on an account and for $500 attorney's fees. It was alleged that Emergency Steel Import Corporation sold to appellant certain sheet steel for the sum of $10,853.70, and that all of said account had been paid except $2,337.14, and that the account was owned by appellee. The case was submitted to a jury, and upon a hearing of appellee's motions for judgment non obstante veredicto and for judgment on the verdict, judgment was rendered for appellee as prayed for.

Appellee attached to the petition an account verified by an affidavit stating that the account "is within the knowledge of the affiant * * *, just and true; that it is due and unpaid; and that all just and lawful offsets, payments and credits have been allowed, * * *." There is in the record no sworn denial of the account.

Appellee insists that it was entitled to an instructed verdict, its position being that as the account was not denied under oath, appellant could not properly adduce evidence to show that the account was not just or true or lawfully chargeable to it.

Rule 185, Texas Rules of Civil Procedure, provides that in an action upon a verified account, the same shall be taken as prima facie evidence thereof, unless the party resisting such claim shall file a written denial, under oath, stating that such claim is not just or true. By virtue of this Rule and superseded Article 3736, it has been held that failure to file a sworn denial of a verified account amounts to an admission that the account is correct. Crenshaw v. Home Lumber Co., Tex.Civ.App., 296 S.W. 342; Knowles v. Gary & Burns Co., Tex.Civ.App., 141 S.W. 189, writ refused; Yelton v. Bird Lime & Cement Co., Tex.Civ.App., 161 S.W.2d 353; Dozier v. Jarman, Tex.Civ.App., 254 S.W.2d 569; Scott v. Exchange Petroleum Corporation, Tex.Civ.App., 71 S.W.2d 539; Glasco v. Frazer, Tex.Civ.App., 225 S.W.2d 633.

But if appellant was not foreclosed by the provisions of Rule 185, we think the evidence and findings of the jury support the judgment.

It was shown that Gates, an employee of appellant, ordered the steel in controversy; but appellant contends that it was not shown that Gates was authorized by appellant to make the particular purchase, or that in doing so he acted within the scope of his authority.

Walker, appellant's president, testified that Gates was appellant's purchasing agent, whose duty was to purchase materials for appellant; that several times before the order in controversy was made, Gates had ordered steel from Emergency Steel Import Corporation, and appellant paid for it; that

Gates would "phone in" the orders, and follow with written purchase orders; "Q. * * * and you held him out to other agents or people from whom you purchased material that he had that authority, didn't you? A. That's right;" that the witness authorized Gates to order from Emergency Steel Import Corporation one "load" of steel for Worton, appellant's customer, without specifying the exact amount. Worton received the steel, the payment for which is involved in this suit. The Jury found that the seller did not have notice of any limitation on Gates' authority.

The entire amount of steel, the purchase price of which was $10,853.70, was ordered by Gates for customers of appellant, and not for appellant's own use; but the seller did not know that to be the fact. The jury found that Gates instructed the seller to deliver the steel to Rex Kee Trucks, and that the load in controversy was delivered to a driver named Maxie Martin. Although the jury found that Martin did not have authority from appellant to receive the steel, and that the steel was not delivered to appellant, Walker testified that it was delivered to Worton or his agent, and that after appellant received the original bill of lading from the seller, "We considered it ours," and began trying to locate Worton. Appellant filed suit against Worton for the exact amount claimed by appellee in this suit, and alleged that appellant had sold the steel to Worton and that he agreed to pay appellant $2,337.14 for it; and Gardner, appellant's credit manager, filed an affidavit for writ of attachment, stating that Worton was justly indebted to appellant in the sum of $2,337.-14. Some of the steel was recovered by appellant from Worton's customers, and Worton gave appellant his check for $1,-160. on the account, on which, however, he stopped payment. We think the evidence supports a finding that Gates acted within the apparent scope of his authority when he ordered the steel in controversy.

■ Appellant pleaded compromise and settlement. Notwithstanding the jury

found that Schoen, the seller's sales manager, on May 19, 1952, represented to Johnston, appellant's vice president, that appellant's account was only $9,132.79 exclusive of some steel held in a warehouse, and that Schoen agreed to try to sell the warehoused steel and if successful, to give appellant credit, and that Schoen accepted appellant's check for $9,132.79 "in full settlement" of the account, we do not think the evidence warrants a holding that the claim was compromised and settled.

Appellant's officers knew that Gates had ordered one load of steel in appellant's name, which was actually purchased for Worton. Appellant's president expressly authorized him to make that purchase. It seems that such officers did not know that Gates had ordered steel for their customers in the additional amount of $10,853.70. Johnston went to appellee's office to ascertain the status of the account. While there, he told Schoen that appellant would pay for all steel that had been shipped to that date, but would not pay for any that had been ordered and not shipped. Without agreeing to release appellant from any obligation to pay for the steel that had been ordered and was then in the seller's warehouse, Schoen agreed to try to sell it, which he succeeded in doing, and gave appellant credit for it. In arriving at the amount owing for the steel that had been shipped, one load was overlooked, because two original bills of lading had been clipped together, and the amount reflected by only one of these two was taken into consideration. Johnston then wrote a check on appellant for the amount that Schoen then thought covered all the steel that had been shipped. This check was for $9,132.79, which included payment for some steel ordered prior to the $10,853.70 purchase out of which this suit arose. Later, the overlooked bill of lading was discovered, and Schoen immediately advised Johnston of the error, and at Johnston's request, sent the original bill of lading to appellant. That bill of lading covered the amount of steel the payment for which is now in controversy.

■ We do not think the elements of compromise and settlement are reflected by this record. Johnston offered to pay for all steel that had been ordered by Gates and actually shipped. By inadvertence, one shipment was overlooked. There seems to be lacking, among other things, the element of consideration. A contract of compromise and settlement, like any other contract, must be supported by a consideration. 9 Tex.Jur., p. 339, sec. 6; 11 Am.Jur., p. 264, sec. 18; 15 C.J.S., Compromise and Settlement, § 9, p. 724.

We have carefully considered all of appellant's assignments, and think that reversible error is not shown.

The judgment is affirmed.